Filed 8/24/23  P. v. Quinarez CA2/8

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE, | B321649 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA113917) |
| v. | |
| JUAN CARLOS QUINAREZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Rob B. Villeza, Judge.  Affirmed.

Emry J. Allen, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Kenneth C. Byrne and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

* * * * * * * * * *

In September 2020, we affirmed defendant and appellant Juan Carlos Quinarez's conviction of murder and attempted murder. (*People v. Lomeli* (Sept. 22, 2020, B297259) [nonpub. opn.].) He now appeals from the denial of his petition for resentencing pursuant to Penal Code section 1172.6 (former § 1170.95). Shortly before this appeal was filed, former section 1170.95 was renumbered and recodified as section 1172.6 with no change in the text. (Stats. 2022, ch. 58, § 10.) For clarity, we refer to former section 1170.95 only by its new designation (§ 1172.6).

We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In June 2016, A.M-L. and J.E. attended a birthday party for their friend, A.L. The other guests at the home were mostly A.L.'s family members, including his parents and his brother G.L. We refer to the victims by their initials to protect their privacy. (*People v. Lomeli*, *supra*, B297259.)

Sometime after midnight, A.M–L. and J.E. decided to head home. They walked across the street to where J.E.'s car was parked and got in. Before they could pull away from the curb, an SUV pulled alongside them and stopped. A.L. and G.L. heard some sort of commotion and started walking toward where the cars were parked. (*People v. Lomeli*, *supra*, B297259.)

Three people, two wearing hoodies and one wearing a hat, got out of the SUV and asked A.M–L. and J.E. where they were from. A.M–L. understood the question as asking whether they belonged to a gang. A.M–L. said they were from nowhere. J.E. got out of the car and exchanged words with the individuals and very quickly a physical altercation erupted between J.E. and one of the individuals from the SUV. J.E. looked like he needed help

so A.M–L. got out of the car.  Almost immediately after he confronted one of the attackers, shots rang out.  A.M–L. was hit multiple times and fell to the ground, as did J.E.  (*People v. Lomeli*, *supra*, B297259.)

G.L. and A.L. ran towards the melee, worried about their two friends, but the shooter turned toward them.  Both of them saw muzzle flashes, so they turned and ran in the opposite direction to take cover.  (*People v. Lomeli*, *supra*, B297259.)

J.E. received multiple gunshot wounds, including a fatal one to his head.  A.M–L. suffered multiple nonfatal gunshot wounds to his right arm and shoulder, his left hip, the left side of his head and his chin.  G.L. and A.L. were uninjured.  (*People v. Lomeli*, *supra*, B297259.)

Defendant was charged, along with codefendant Jose Luis Lomeli, with one count of murder (Pen. Code, § 187, subd. (a); count 1), and three counts of attempted murder (§§ 187, subd. (a), 664; counts 2–4).  Gang and firearm use allegations were also pled (§§ 186.22, 12022.53, subds. (b)–(e)(1)).

The case proceeded to a joint jury trial in September 2018.  The prosecution's theory was that codefendant Lomeli was the shooter and that defendant aided and abetted his crimes.  The prosecution's evidence at trial included the testimony of Megan Anzelde, Lomeli's girlfriend.  She testified pursuant to a leniency agreement and received a sentence of seven years in prison.  (*People v. Lomeli*, *supra*, B297259.)

Ms. Anzelde testified that Lomeli was the leader of the Townsmen criminal street gang with the nickname Villain.  She knew defendant by his gang moniker, Loco.  Lomeli was known for always carrying a loaded nine-millimeter handgun.

3

Ms. Anzelde saw Lomeli habitually carry it openly in front of defendant. (*People v. Lomeli*, *supra*, B297259.)

On the night of the shooting, Ms. Anzelde was with Lomeli, defendant and two other Townsmen gang members, Jesse Nunez, known as Crooks, and the other known as Dreamer. They were at Dreamer's house drinking and doing methamphetamine. At some point, Lomeli said that the younger gang members (including defendant and Nunez) needed some "schooling" and to be shown what "old school gang banging was about." He was holding his handgun at the time. (*People v. Lomeli*, *supra*, B297259.)

Sometime after midnight, Ms. Anzelde, Lomeli, defendant and Nunez left Dreamer's house in a white SUV driven by Ms. Anzelde. Lomeli was in the front passenger seat and Nunez and defendant were seated behind them. Ms. Anzelde heard either defendant or Nunez say that someone was "hitting up" a wall, meaning someone was writing graffiti. They were in Townsmen territory. Lomeli told Ms. Anzelde to make a U-turn, turn off her headlights and go back. She complied. (*People v. Lomeli*, *supra*, B297259.)

Ms. Anzelde saw two males (whom she did not recognize) "jogging" across the street toward a parked car. She stopped the SUV next to the car but kept the engine running. Lomeli, defendant and Nunez got out. Lomeli asked the two men where they were from. One of them replied they were from nowhere. (*People v. Lomeli*, *supra*, B297259.)

Lomeli then said, "Townsmen" and the man standing next to the driver's side of the car (J.E.) replied "Fuck Townsmen." A fistfight erupted. Ms. Anzelde did not see who threw the first punch. Everything happened very fast. All five men were

moving around in close quarters, but her attention was on Lomeli. At some point, Lomeli hit J.E. in the head with the butt of his handgun, and he fell down. Fighting continued and eventually shots rang out. Ms. Anzelde believed Lomeli fired maybe 10 shots. (*People v. Lomeli*, *supra*, B297259.)

The jury found the murder of J.E. to be in the first degree and that the attempted murder of A.M–L. was premeditated. The jury convicted defendant of first degree murder and one count of attempted murder, and found true the gang allegation and the allegation a principal used and discharged a firearm during the commission of the offenses as to both counts. The jury acquitted defendant of the other two counts of attempted murder regarding A.L. and G.L.

We affirmed the convictions of defendant and codefendant Lomeli. (*People v. Lomeli* (Sept. 22, 2020, B297259) [nonpub. opn.].)

While defendant's direct appeal was pending, the Legislature passed Senate Bill 1437 (2017–2018 Reg. Sess.), amending Penal Code sections 188 and 189 to narrow accomplice liability for felony murder and eliminate the natural and probable consequences doctrine as it relates to murder. (Stats. 2018, ch. 1015, § 2, § 3.) Senate Bill 1437 also added section 1172.6 which sets forth a procedure for individuals convicted of felony murder or murder under a natural and probable consequences theory to petition for resentencing. (Stats. 2018, ch. 1015, § 4.)

The Legislature also subsequently passed Senate Bill 775 (2021–2022 Reg. Sess.) which, among other things, extended sentencing relief to those convicted of murder under a theory where "malice is imputed to a person based solely on that

5

person's participation in a crime" and to those convicted of attempted murder.  (Stats. 2021, ch. 551, § 2.)

In January 2022, defendant filed his resentencing petition in propria persona, checking the boxes that he was convicted of murder and attempted murder under a theory of felony murder, the natural and probable consequences doctrine or other theory in which malice was imputed to him and that he could no longer be convicted under the amended murder statutes.  He sought appointment of counsel.

Because the judge that presided over the trial was no longer available, defendant's petition was assigned to a new judge.  The court appointed counsel for defendant.  The People filed opposition and defendant, through appointed counsel, filed a reply.

At a hearing on June 15, 2022, the court heard argument from counsel.  The court said it had reviewed the parties' briefs, the abstract of judgment, the charging document, preliminary hearing transcript, jury instructions and this court's opinion from the direct appeal.  The court denied defendant's petition, finding he was not eligible for relief as a matter of law.

This appeal followed.  We grant defendant's request to take judicial notice of this court's opinion in the direct appeal in *People v. Lomeli*, *supra*, B297259.

## DISCUSSION

Defendant contends the record of conviction "strongly suggest[s]" he was convicted of murder and attempted murder on a theory of vicarious liability—that malice was imputed to him based solely on his participation with the actual killer, Lomeli. Defendant argues the jury instructions were ambiguous on intent to kill and says the trial court should have ordered an evidentiary

6

hearing and required the prosecution to prove guilt under the amended murder statutes. We do not agree.

We conclude the record of conviction conclusively establishes defendant's ineligibility for sentencing relief and therefore affirm the denial of his petition. (*People v. Ervin* (2021) 72 Cal.App.5th 90, 101 [appellate court reviews de novo the denial of a resentencing petition at the prima facie stage].)

### 1. Applicable Law

The Legislature amended Penal Code sections 188 and 189 " 'to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' " (*People v. Strong* (2022) 13 Cal.5th 698, 707–708.)

To effectuate this goal, Penal Code section 1172.6 was enacted to provide a means for individuals convicted under the former law to petition for relief. As originally enacted, Senate Bill 1437 limited the right to resentencing relief to those individuals convicted of murder under the felony-murder rule or the natural and probable consequences doctrine. (*People v. Lewis* (2021) 11 Cal.5th 952, 957 (*Lewis*).) The Legislature subsequently expanded the scope of those authorized to file resentencing petitions to include individuals convicted of attempted murder and to those convicted of murder "under any theory under which malice is imputed to a person based solely on that person's participation in a crime." (Stats. 2021, ch. 551.)

The trial court's prima facie inquiry of a resentencing petition is "limited." (*Lewis, supra*, 11 Cal.5th at p. 971.) *Lewis* instructs that the court's review at the prima facie stage may include consideration of the record of conviction from which a

7

finding of ineligibility may be made as a matter of law. " '[I]f the record, including the court's own documents, "contain[s] facts refuting the allegations made in the petition," then "the court is justified in making a credibility determination adverse to the petitioner." ' " (*Ibid.*; accord, *People v. Harden* (2022) 81 Cal.App.5th 45, 52 [court may deny a petition at the prima facie stage if the petitioner is ineligible for relief as a matter of law].)

## 2. Analysis

The jury was not instructed with felony murder or the natural and probable consequences doctrine, as defendant concedes. We reject defendant's contention the jury instructions allowed the jury to convict him on a theory of imputed malice or were otherwise ambiguous on intent to kill.

The jury was instructed with CALCRIM Nos. 520, 521, 600 and 601 which accurately explain first and second degree murder, express and implied malice, premeditated attempted murder and the prosecution's burden to establish the crimes of murder and attempted murder. CALCRIM No. 252 told them that the crimes of murder and attempted murder required "proof of the union, or joint operation, of act and wrongful intent."

On the principle of direct aiding and abetting, the jury was instructed: "To prove that a defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did

8

in fact aid an abet the perpetrator's commission of the crime."
(CALCRIM No. 401.)

The jury was told that "Someone *aids and abets* a crime if
he or she knows of the perpetrator's unlawful purpose and he or
she specifically intends to, and does in fact, aid, facilitate,
promote, encourage or instigate the perpetrators' commission of
that crime."  (CALCRIM No. 401.)

The jury found codefendant Lomeli committed *a first degree
murder and a premeditated attempted murder*, necessarily
concluding Lomeli acted with express malice, i.e., intent to kill.
(CALCRIM No. 521 ["A defendant acted *willfully* if he intended to
kill."]; CALCRIM No. 601 [same].)  The jury found defendant
aided and abetted Lomeli in those crimes.  Therefore, the jury
necessarily found that defendant knew Lomeli intended to kill
and engaged in acts to aid and abet his crimes knowing of his
intended purpose.

Defendant argues that aiding a perpetrator with knowledge
of the perpetrator's intent to kill is not the same as sharing that
intent.  He says "the jury by its verdict did not necessarily find
the element of malice now required" by the amended murder
statutes.  He relies on *People v. Langi* (2022) 73 Cal.App.5th 972
(*Langi*) and says it is "of no moment" that *Langi* concerned
second degree murder.  The argument is without merit.

That *Langi* involved second degree murder is precisely the
point.  *Langi* concluded that "the standard aiding-and-abetting
instructions are ill suited to the crime of second degree murder"
(*Langi, supra*, 73 Cal.App.5th at p. 982) and a killing by one who
acted with a conscious disregard for life.  There is nothing in the
*Langi* analysis that would apply to a first degree murder
committed with express malice.

9

The jury instructions and verdict unequivocally demonstrate defendant was found guilty of participating in the charged crimes with express malice. Defendant is therefore ineligible for relief as a matter of law and the trial court did not err in failing to conduct an evidentiary hearing.

Defendant also raises a constitutional argument based on the due process clause and Eighth Amendment. However, this argument was not raised in the trial court and therefore has been forfeited.

## DISPOSITION

The order denying defendant and appellant Juan Carlos Quinarez's petition for resentencing is affirmed.


GRIMES, Acting P. J.

WE CONCUR:


WILEY, J.


VIRAMONTES, J.

10